**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| Jeffers Handbell Supply, Inc. | ) | |
| | ) | Civil Action No.: 0:16-cv-03918-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Schulmerich Bells, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

     Plaintiff Jeffers Handbell Supply, Inc. ("Jeffers") filed a complaint against Defendant Schulmerich Bells, LLC ("Schulmerich"), seeking a declaratory judgment that Jeffers' goods and services do not infringe on any trademark or trade dress associated with Schulmerich's handbell products and packaging. (ECF No. 1.) Before the court is Schulmerich's motion to dismiss the complaint or, alternatively, to transfer the action to the U.S. District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 12(b)(1) and (3). (ECF No. 6.) For the reasons that follow, the court **DENIES** the motion.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

    On November 29, 2016, a little more than two weeks before the instant declaratory judgment action was filed in this court, Schulmerich filed a complaint in Pennsylvania state court against Shawn Lackey,[1] an employee of Jeffers, asserting infringement and dilution of Schulmerich's trademarks and trade dress under federal and Pennsylvania law. (*See* ECF No. 11-1.) The complaint alleged that Lackey, had "recently beg[u]n to manufacture and distribute

---

[1] Jeffers has elsewhere stated that, although named as Shawn L. Lackey in Shulmerich's complaint, the employee's name is Phillip Shawn Lackey. *See Schulmerich Bells, LLC v. Jeffers Handbell Supply, Inc.*, No. 3:17-cv-00186-JMC (D.S.C.), ECF No. 1 at 1.

component parts related to musical handbells" with "design, color scheme[,] and overall aesthetic appearance" that were "virtually identical to those of Schulmerich's" such that "buyers will likely confuse the two product lines of musical handbell component parts" in violation of Schulmerich's rights under the trademark laws. (*Id.* at 3; *see also id.* at 8-12 (detailing Lackey's allegedly infringing conduct).) The complaint alleged further that Lackey had distributed the offending products through Jeffers, which acted as a retailer and advertised the products. (*See id.* at 3, 8-9.)

The original state-court complaint did not name Jeffers as a defendant (*see id.*), and Jeffers filed the instant suit in this court on December 15, 2016, seeking a declaratory judgment of non-infringement of Schulmerich's trademarks and trade dress and involving substantially the same trademark matters at issue in Schulmerich's state-court complaint against Lackey (*see* ECF No. 1); *see also Schulmerich*, No. 3:17-cv-00186-JMC, ECF No. 7 at 1. Among other things, in the complaint in the instant action, Jeffers alleges that "Schulmerich has taken the position that handbells distributed . . . [and] sold by Jeffers infringe Schulmerich's alleged rights" under the trademark laws (ECF No. 1 at 2), and Jeffers seeks a declaratory judgment that it has not infringed Schulmerich's trademark rights (*see id.* at 5-8.)

After learning of the instant action, Schulmerich, on January 5, 2017, amended its state-court complaint to include Jeffers as a named defendant. *See Schulmerich*, No. 3:17-cv-00186-JMC, ECF No. 1 at 6-24. The amended complaint alleged that Jeffers, along with Lackey, had begun manufacturing, distributing, and selling component parts for musical handbells that "employ virtually the same aesthetic appearance as those produced by Schulmerich[,] . . . are confusingly similar to the well-known trade dress of Schulmerich's handbells[, and] . . . mimic[] nearly every element of the Schulmerich aesthetic design," in violation of Shulmerich's rights under the trademark laws. *Id.* at 13-14. Thereafter, on January 18, 2017, Jeffers removed the state-court

action to the U.S. District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1446(a). *See Schulmerich*, No. 3:17-cv-00186-JMC, ECF No. 1 at 1.

On January 30, 2017, Schulmerich filed the instant motion to dismiss the complaint or, in the alternative, to transfer the action to the U.S District Court for the Eastern District of Pennsylvania. (ECF No. 6.) First, Schulmerich argues that the action should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) because Jeffers failed to plead a sufficient injury-in-fact necessary to demonstrate its standing to bring a declaratory judgment action. (*See id.* at 2; ECF No. 6-1 at 7-11.) Second, Schulmerich argues that the action should be dismissed or transferred under Rule 12(b)(3) and § 1404(a) because this district is not the proper venue. (ECF No. 6 at 3-4; ECF No. 6-1 at 11-18.) In this regard, Schulmerich asserts that this district is an improper venue because Jeffers has failed to demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in South Carolina (*see* ECF No. 6 at 3; ECF No. 6-1 at 11-14) and because, in a series of purchase orders for Schulmerich handbell parts, Jeffers agreed to resolve any dispute arising under such purchase orders in certain state or federal courts in Pennsylvania (*see* ECF No. 6 at 3-4; ECF No. 6-1 at 14-18.) Third, Schulmerich argues that this court should abstain from proceeding with the declaratory judgment action until the action brought against Lackey and Jeffers in the U.S. District Court for the Eastern District of Pennsylvania is resolved. (*See* ECF No. 6 at 4-6; ECF No. 6-1 at 18-30.)

The next day, on January 31, 2017, Jeffers filed a motion to stay the Pennsylvania action, dismiss it, or transfer it to this district. *See Schulmerich*, No. 3:17-cv-00186-JMC, ECF No. 4. In regard to transferring the action, the parties' arguments focused largely on application of the first-filed rule and exceptions to it. *See id.*, ECF No. 4-1 at 8-15; *id.*, ECF No. 6 at 7-19; *see generally Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). While Jeffers' motion remained

pending in the Pennsylvania action, the parties proceeded to brief this court on the instant motion filed by Schulmerich, with Jeffers filing a response on February 10, 2017, Schulmerich filing a reply on February 17, 2017, and Jeffers filing a sur-reply on February 21, 2017. (*See* ECF Nos. 11, 12, 14, 16.)

On February 21, 2017, the district court in Pennsylvania granted Jeffers' motion. *See Schulmerich*, No. 3:17-cv-00186-JMC, ECF Nos. 7, 8. The district court determined that, for purposes of the first-filed rule, Jeffers' declaratory judgment action filed in this court was the first action filed in federal court and, thus, was filed before Schulmerich's trademark action was filed in federal court in Pennsylvania. *See id.*, ECF No. 7 at 3-4. The district court also rejected Schulmerich's arguments that an exception to the first-filed rule applied under the circumstances presented. *See id.* at 4-6. Accordingly, the district court transferred Schulmerich's trademark action to this court.[2] *See id.*, ECF Nos. 7, 8, 13.

The next day, on February 22, 2017, Jeffers filed a supplemental response to the instant motion to dismiss or transfer, addressing the transfer order from the district court in Pennsylvania. (*See* ECF No. 17.) Jeffers argues that the transfer renders Schulmerich's arguments for abstention moot. (*See id.*) Schulmerich has not attempted to file a supplemental reply or to otherwise address how the transfer order might affect the court's consideration of the instant motion.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) standard

A motion to dismiss for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1).

---

[2] The district court subsequently denied Schulmerich's motion to reconsider its order granting the motion to transfer. *See Schulmerich*, No. 3:17-cv-00186-JMC, ECF Nos. 11, 12.

"Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* In a motion to dismiss pursuant to Rule 12(b)(1), "[t]he burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

"The power of federal courts to entertain suits is circumscribed by Article III of the United States Constitution, which limits judicial authority to 'Cases' and 'Controversies.'" *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "'[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process,' and thus meet the requirements of Article III." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990)). To have constitutional standing, a party must meet three requirements:

> (1) the party has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (brackets omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61; *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008)).

**B. Rule 12(b)(3) standard**

To grant a motion under Rule 12(b)(3), the court must find that the venue is improper. *See* Fed. R. Civ. P. 12(b)(3). "'When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper.'" *Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc.*, 966 F. Supp. 2d 604, 616 (D.S.C. 2013) (brackets omitted) (quoting *Butler v. Ford Motor Co.*, 724 F. Supp. 2d 575, 586 (D.S.C. 2010)). However, the plaintiff is obliged "to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). "In assessing whether there has been a prima facie venue showing, [the court] view[s] the facts in the light most favorable to the plaintiff." *Id.* (citing *Global Seafood Inc. v. Bantry Bay Mussels Ltd.,* 659 F.3d 221, 224 (2d Cir. 2011)). Moreover, "[o]n a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Id.* at 365-66 (citing *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)).

A case filed in an improper venue must be dismissed, or, if in the interests of justice, transferred to a district in which it could have been brought. 28 U.S.C. § 1406(a). Under the general venue statute, a civil action may be brought, and venue is proper, in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

# III. ANALYSIS

Schulmerich argues (A) that Jeffers has not sufficiently pled an injury-in-fact necessary for it to meet the constitutional standing requirement; (B) that venue in this district is improper because a substantial part of the events or omissions giving rise to Jeffers' declaratory judgment action did not occur in South Carolina and because the forum-selection clause in the purchase orders between Schulmerich and Jeffers prescribes courts in Pennsylvania as the only permissible venues; and (C) that the court should abstain from proceeding with the declaratory judgment action until Schulmerich's trademark action that it brought in Pennsylvania is resolved. The court addresses each of these arguments in turn.

## A. Standing

Prior to the Supreme Court's decision in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007), when confronted by a plaintiff seeking a declaratory judgment of non-infringement in trademark and like cases, courts in the Fourth Circuit employed a two-pronged test, borrowed from the Federal Circuit, to determine whether a case or controversy existed: (1) the defendant's conduct must have created a reasonable apprehension in the plaintiff that the defendant would initiate litigation if the plaintiff continued the allegedly infringing activity, and (2) the plaintiff must have actually produced the infringing product or have prepared to produce it. *See Superguide Corp. v. Kegan*, 987 F. Supp. 481, 483 (W.D.N.C. 1997) (citing *Windsurfing Int'l, Inc. v. AMF Inc.*, 828 F.2d 755, 757-58 (Fed. Cir. 1987)); *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 788-89 (E.D. Va. 1997) (collecting Federal Circuit cases); *Bioxy, Inc. v. Birko Corp.*, 935 F. Supp. 737, 741 (E.D.N.C. 1996) (same); *Ryobi Am. Corp. v. Peters*, 815 F. Supp. 172, 173 (D.S.C. 1993) (citing *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 634 (Fed. Cir. 1991)); *see also* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2761 (4th ed. 2016) (describing

two-pronged test). In *MedImmune*, however, the Supreme Court revisited its holdings regarding constitutional standing requirements in declaratory judgment actions in the patent infringement context and expressly rejected the reasonable apprehension component of the Federal Circuit's two-prong test. *See* 549 U.S. at 132 n.11. Following *MedImmune*, the Federal Circuit abandoned its two-prong test, *see SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007), and courts within the Fourth Circuit have followed suit, *see InVue Sec. Prods, Inc. v. Merch. Techs., Inc.*, No. 3:12-cv-88-RJC-DSC, 2012 WL 2577452, at *2-3 (W.D.N.C. July 3, 2012); *Alpharma, Inc. v. Purdue Pharma L.P.*, 634 F. Supp. 2d 626, 629 n.3 (W.D. Va. 2009); *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 891-95 (D. Md. 2008); *Apotex, Inc. v. Novartis AG*, No. 3:06-cv-698, 2007 WL 5493499, at *4 (E.D. Va. Sept. 4, 2007), as have other courts, *see Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1238, 1241-44 (10th Cir. 2008) (Gorsuch, J.) (explaining, in case in which putative trademark infringer sought declaratory judgment of non-infringement, that *MedImmune* prevented application of Federal Circuit's two-prong test that had been largely adopted by Tenth Circuit); *see also U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 971-73 (8th Cir. 2015); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94-96 (2d Cir. 2011); *Vantage Trailers v. Beall Corp.*, 567 F.3d 745, 748-49 (5th Cir. 2009).

Under *MedImmune*, the test for standing needed to maintain a declaratory judgment action in the context of a patent case is the same as in any other context: whether, "under all the circumstances," a "definite and concrete" controversy exists between parties having adverse legal interests and is of sufficient "immediacy and reality to warrant the issuance of a declaratory judgment," such that a declaration would not simply amount to "an opinion advising what the law would be upon a hypothetical state of facts." 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,

482 F.3d 1330, 1338 (Fed. Cir. 2007). Thus, since *MedImmune*, the Federal Circuit's articulation of the minimum standing requirement in such cases has been more lenient than under its previous two-prong test. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008). The Federal Circuit has "held that 'Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.'" *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357 (Fed. Cir. 2013) (quoting *SanDisk*, 480 F.3d at 1381). Under this formulation, although reasonable apprehension of litigation is not necessary, the first prong of the former test remains relevant because demonstrating reasonable apprehension is one method that a plaintiff may use to show that it must choose between engaging in arguably illegal behavior and forgoing a claimed legal right. *See id.* at 1358 n.5 ("While a declaratory judgment plaintiff is no longer required to demonstrate a reasonable apprehension of suit, such a showing remains sufficient to establish jurisdiction." (internal citations omitted) (citing, *inter alia*, *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012))); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) ("While the Supreme Court rejected the reasonable apprehension of suit test as the sole test for jurisdiction, it did not completely do away with the relevance of a reasonable apprehension of suit. Rather, following *MedImmune,* proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy."); *accord U.S. Water Servs.*, 794 F.3d at 973; *Titan Atlas Mfg., Inc. v. Sisk*, No. 1:11cv00012, 2011 WL 3665122, at *4 (W.D. Va. Aug. 22, 2011); *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 536 n.20 (D. Md. 2010). Likewise, the second prong—whether the plaintiff has engaged in "meaningful preparation to conduct

potentially infringing activity"—"remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate" because if the "plaintiff has not taken significant, concrete steps to conduct infringing activity, the dispute is neither 'immediate' nor 'real.'" *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008); *accord JIA Jewelry Importers of Am., Inc. v. Pandora Jewelry, LLC*, No. CCB-11-982, 2011 WL 4566118, at *2 (D. Md. Sept. 29, 2011); *Fox Grp., Inc. v. Cree, Inc.*, 819 F. Supp. 2d 520, 523 (E.D. Va. 2011); *Barnhardt Mfg. Co. v. Ill. Tool Works, Inc.*, No. 3:08-cv-617-W, 2010 WL 1571168, at *3 (W.D.N.C. Apr. 16, 2010).

It does not appear that the parties have recognized the changes to the standing analysis occasioned by *MedImmune* and the case law following it. Jeffers asks for application of the two-prong test and asserts that, because both prongs are satisfied, Schulmerich's argument that Jeffers lacks standing to bring its declaratory judgment action is meritless. The court agrees that Jeffers would satisfy the two-prong test and, because satisfying this more stringent test results in Jeffers' satisfying the more lenient post-*MedImmune* test, concludes that Jeffers has met its burden to demonstrate its standing to bring this declaratory judgment action.

There is no question that Jeffers has satisfied the two-pronged test. The court need look no further than the original complaint filed by Schulmerich in Pennsylvania state court. Regarding the first prong, Schulmerich sued Lackey, an employee of Jeffers, alleging that his manufacturing and distributing of handbell parts infringed Schulmerich's trademarks and trade dress and that one of Lackey's methods of distribution was through Jeffers. The facts that Schulmerich's complaint specifically named Jeffers, that it alleged that Jeffers was engaging in the same distribution conduct for which it was suing a third party, that the third party was an employee of Jeffers, and that the third party whom it sued for distribution was a customer of Jeffers' distribution and retailing

services all demonstrate that Jeffers had a reasonable apprehension of a future suit against it by Schulmerich. *See Prasco*, 537 F.3d at 1341 ("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy."); *Bioxy*, 935 F. Supp. at 742 ("A declaratory judgment plaintiff may claim reasonable apprehension of future litigation sufficient to create a case or controversy if the patentee . . . sues or threatens to sue the plaintiff's customers[ or] initiates litigation against manufacturers of similar products . . . ." (citing *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 & n.6 (Fed. Cir. 1983))).[3] Regarding the second prong, Schulmerich's complaint itself alleged that Jeffers distributed and advertised the allegedly infringing products for Lackey, and there appears no dispute that, at the time the declaratory judgment action was filed, Jeffers actually manufactured, distributed, and sold products that Schulmerich alleges infringes on its trademarks. Thus, the court has no trouble concluding that Jeffers engaged in meaningful preparation to produce, and actually did produce, the allegedly infringing products. Because the record shows that Jeffers satisfies both prongs of the pre-*MedImmune* test, the court concludes that Jeffers has met its burden to demonstrate standing under the new, more lenient post-*MedImmune* test.[4]

---

[3] For these same reasons, Schulmerich itself acknowledges that Jeffers should have reasonably apprehended that it was about to be sued for trademark infringement. In arguing that the court should abstain from proceeding on the declaratory judgment action until the Pennsylvania action is resolved, Schulmerich explains that "Jeffers knew of the Pennsylvania [a]ction, and it should have foreseen its eventual involvement in the Pennsylvania [action]—especially if Lackey is, in fact, an employee of Jeffers. The principle of *respondeat superior* would make Jeffers' involvement inevitable." (ECF No. 6-1 at 29 n.7.)

[4] In addition, based on the same record, the court concludes under the totality of the circumstances that Schulmerich's conduct in filing its trademark action in Pennsylvania state court put Jeffers in a position of either pursuing the arguably illegal behavior of manufacturing, distributing, and selling the allegedly infringing handbell parts or abandoning a business, in which Jeffers claims a right to engage.

**B. Venue**

Regarding venue, Schulmerich first argues that venue in this court is improper because Jeffers has failed to demonstrate that, under the transactional venue statute, a substantial part of the acts or omissions giving rise to this declaratory judgment action occurred in this district. Schulmerich argues second that this action should be transferred to the U.S. District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1494(a) due to a forum-selection clause in purchase orders between Schulmerich and Jeffers. The court addresses these arguments in turn.

1. Transactional venue

Unlike actions involving other intellectual property, trademark infringement actions are subject to the general venue provisions of § 1391, *see* Charles Alan Wright et al., *Federal Practice and Procedure* § 3806 (4th ed. 2013), as are actions seeking a declaratory judgment of non-infringement of a trademark, *cf. id.* § 3823 (noting that special patent and copyright venue statute "plays no role when an alleged infringer sues for a declaration of non-infringement or that the patent is invalid . . . even though such a declaratory judgment action is 'the mirror image' of the action for infringement that the [defendant] could bring."). Paragraph (2) of § 1391(b), which permits venue in a "district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2), appears to be the only paragraph of the general venue statute applicable to the circumstances at issue in this case. In general, for transactional venue under § 1391(b)(2), "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *see Zike, LLC v. Catalfumo*, No. 6:11-1841-TMC, 2012 WL 12867973, at *3 (D.S.C. Feb. 29, 2012) ("'The statutory standard for venue focuses not on whether a defendant has made a deliberate contact—a

factor in the analysis of personal jurisdiction—but on the location where events occurred.'" (quoting *MTGLQ Inv'rs, L.P. v. Guire*, 286 F. Supp. 2d 561, 565 (D. Md. 2003))). "It is sufficient for venue that a substantial part of the events occurred in a district, 'even if a greater part of the events occurred elsewhere.'" *Zike*, 2012 WL 12867973, at *3 (quoting *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008).

Schulmerich contends that, under § 1391(b)(2), Jeffers has failed to demonstrate that a substantial part of the events or omissions giving rise to the declaratory judgment action occurred in South Carolina. (ECF No. 6-1 at 11-13.) In Schulmerich's view, Jeffers must show that Schulmerich sells products in South Carolina or that it specifically targets and directs advertising and sales efforts in South Carolina. (*Id.* at 12.) Schulmerich points out that Jeffers has not alleged these facts and that the only allegation that Jeffers has lodged—that Schulmerich maintains a website accessible in South Carolina—is insufficient to make venue in this court permissible. (*Id.* at 12-13.)

The court disagrees with Schulmerich that, in order to demonstrate that venue in this district is proper, Jeffers must provide evidence of Schulmerich's activities in South Carolina and that Jeffers' failure to do so would be, without more, sufficient justification to grant the instant motion. Implicit in Schulmerich's argument is the notion that, in assessing whether venue has been properly laid under § 1391(b)(2), the court should look to the activities of the defendant within the forum rather than the activities of the plaintiff. In the leading case for this proposition, *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995), the Eighth Circuit was faced with a trademark infringement action, in which the plaintiff trademark owner averred that venue was proper in the forum in which he resided because, although he provided no evidence that the defendants had advertised or sold any product using the infringing mark within that forum, he had proved, among other things, that

he had incurred the injury in the forum where he resided. 70 F.3d at 984-85. In ruling that venue

does not lie in a forum merely because the plaintiff was injured there, the Eighth Circuit explained:

> [A]ccepting [the plaintiff's] argument would work a transformation of the
> venue statute that Congress could not have intended. One of the central
> purposes of statutory venue is to ensure that a defendant is not "haled into a
> remote district having no real relationship to the dispute." While the present
> venue statute was certainly intended to expand the number of venues available
> to a plaintiff, we are reluctant to impute to Congress an intent to abandon
> altogether the protection of defendants as a relevant consideration in venue
> matters. We think it far more likely that by referring to "events or omissions
> giving rise to the claim," Congress meant to require courts to *focus on relevant
> activities of the defendant, not of the plaintiff*. For one thing, it is not easy to
> know how a plaintiff's "omissions" could ever be relevant to whether a claim
> has arisen. For another, . . . if Congress had wanted to lay venue where the
> plaintiff was residing when he was injured, it could have said so expressly. We
> therefore reject [plaintiff]'s argument that venue lies in [the forum in which he
> resided] simply because that was where he was residing when the [injury]
> occurred.

*Id.* at 985 (emphasis added) (internal citation omitted).

Although the court does not quibble with the apparent holding of *Woodke*, that

transactional venue under § 1391(b)(2) is not established in a forum merely because the plaintiff

resided in that forum at the time he was injured, the court cannot accept some of the Eighth

Circuit's rationale in reaching that holding. Specifically, the court disagrees with the notion that

the statute "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff."

*Id.* In this instance, the court believes *Woodke*'s "requirement" is an unfortunate example of judges

auguring the intent of lawmakers from sources outside the text of the statute the lawmakers enacted

and then enforcing the perceived intent underlying the statute rather than enforcing its text. *See In

re Enron Corp.*, 317 B.R. 701 (Bankr. S.D. Tex. 2004) ("The court respectfully disagrees with the

analysis in *Woodke*. The venue statute states that an action may be filed in 'a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred,' and does not

specify that a court must look only to the defendant's activities, as the *Woodke* court holds. *Woodke*

inserts language in § 1391 that alters the statute's meaning. The court declines to follow *Woodke*'s reading of § 1391(b) to the extent it focuses on defendant's activities only." (internal citation and ellipsis omitted)); *accord Safety Nat'l Cas. Corp. v. U.S. Dep't of Treasury*, No. H-07-643, 2007 WL 7238943, at *5 (S.D. Tex. Aug. 20, 2007). To borrow a phrase from *Woodke*, if lawmakers had intended to have venue established by requiring courts to focus solely or predominantly on the defendant's activities in the forum, it could have said so expressly in the text of the statute. As this court sees it, in its haste to forswear imputing to lawmakers an intent to ignore a defendant's activities, an intent that is not supported in the text, the Eighth Circuit proceeded to impute to lawmakers an intent to ignore a plaintiff's activities (or nearly so), an intent that also is not supported by the text. It is no surprise, then, that other courts of appeals have declined to adopt *Woodke*'s requirement that courts focus on the defendant's activities and instead "have chosen a more holistic view of the acts underlying a claim." *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 n.6 (1st Cir. 2001); *see also First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998) (declining to limit the review of the events or omissions to the actions of the defendant); *Cottman*, 36 F.3d at 294 (same). This court follows their lead.

Moreover, the court notes that *Woodke*'s requirement that courts focus on the defendant's activities is especially unpersuasive when examined in light of the circumstances of the instant case. Part of the Eighth Circuit's reasoning appears to have been that it could not conceive of a scenario in which "a plaintiff's 'omissions' could ever be relevant to whether a claim has arisen." *Woodke*, 70 F.3d 983. An action, like the present one, in which a plaintiff seeks a declaratory judgment that it did not infringe a trademark appears to be just such a scenario, as the plaintiff is asserting that it is entitled to judgment on a claim at least in part because of actions that it did not take, namely actions that would constitute trademark infringement. Thus, even if the rationale

underlying *Woodke*'s holding was otherwise accepted, a declaratory judgment action alleging non-infringement appears to present a scenario for which *Woodke*'s rationale does not account and, thus, to which it should not apply. For this reason as well, the court rejects Schulmerich's implied contention that Jeffers must present evidence of Shulmerich's activities in South Carolina in order to establish venue.

Having rejected Schulmerich's argument, the court turns to consider whether Jeffers has met its burden to establish that venue is proper in this district under § 1391(b)(2). In general, "in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'" *Mitrano*, 377 F.3d at 405 (internal citation omitted) (quoting *Uffner*, 244 F.3d at 42 (1st Cir. 2001)). There is a surprising dearth of authority directly addressing transactional venue under § 1391(b)(2) in the context of an action for declaratory judgment of non-infringement of a trademark or assessing the entire sequence of events that underlies such an action. Before doing so in this case, the court briefly looks first to relevant aspects of the law regarding transactional venue in trademark infringement actions and in actions for declaratory judgment of non-infringement of a patent.

Although patent infringement cases are governed by a special patent venue statute, "[i]n a declaratory judgment action alleging . . . non-infringement, venue is governed by the general venue statute, 28 U.S.C. § 1391, not . . . the special patent venue statute." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 n.10 (D. Md. 2009) (citing, *inter alia*, *Gen. Tire & Rubber Co. v. Watkins*, 326 F.2d 926, 929 (4th Cir. 1964)); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("It has long been held that a declaratory judgment action alleging

that a patent is invalid and not infringed—the mirror image of a suit for patent infringement—is governed by the general venue statutes, not by [28 U.S.C.] § 1400(b).”), *abrogated on other grounds by TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017); 14D Wright et al., *supra*, § 3823 (“Section 1400(b) does not apply to actions for declaratory judgment, a form of action that was unknown when the 1897 statute was adopted.”). In determining whether venue is appropriate in a declaratory judgment action alleging non-infringement of a patent, courts have concluded that a substantial part of the events or omissions giving rise to such an action occurs where the acts that would give rise to a potential claim of patent infringement occurred. *See Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1198 (D. Colo. 1999) (“[M]ost, if not all, of [the p]laintiffs’ alleged infringement has taken place in [the district]. That the alleged infringement arises in the context of a declaratory judgment action [alleging non-infringement by the plaintiffs] does not change the result. Accordingly, I conclude that venue is proper in [the district].”). Thus, courts look to where the putatively infringing products are designed, manufactured, stored, advertised, and sold. *See Sudden Valley Supply LLC v. Ziegmann*, No. 4:13cv53JCH, 2013 WL 2099440, at *5 (E.D. Mo. May 14, 2013); *Pro Sports Inc v. West*, 639 F. Supp. 2d 475, 484 (D.N.J. 2009); *Election Sys. & Software, Inc. v. Avante Int’l Tech. Corp.*, No. 8:07cv375, 2008 WL 943338, at *3 (D. Neb. April 7, 2008); *Wells’ Dairy Inc. v. Estate of Richardson*, 89 F. Supp. 2d 1042, 1054 (N.D. Iowa 2000); *Dakotah, Inc. v. Tomelleri*, 21 F. Supp. 2d 1066, 1073 (D.S.D. 1998).[5]

---

[5] Of course, this is not to say that courts have not considered other factors as well, such as where the putative infringer has its place of business, *see W. Digital Techs., Inc. v. Bd. of Regents of the Univ. of Tex. Sys.*, No. C 10-3595 SBA, 2011 WL 97785, at *3 (N.D. Cal. Jan. 12, 2011); *Pro Sports*, 639 F. Supp. 2d at 484, and where the patent owner has initiated enforcement actions, *see Sudden Valley Supply*, 2013 WL 2099440, at *5; *W. Digital*, 2011 WL 97785, at *3; *Wells’ Dairy*, 89 F. Supp. 2d at 1054.

In a trademark infringement action, venue is appropriate not only in "the location where there are sales or advertising of goods or services bearing the accused mark" but also in "the location where [alleged infringer] placed the accused mark on the goods or prepared advertising bearing the accused mark," which "will usually also be the same place as where the [alleged infringer] 'resides.'" 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:64 (4th ed.); *see also Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014) ("In a trademark infringement action, a substantial part of the events occur both where the labels are affixed and where confusion of purchasers is likely to occur."). Thus in assessing whether transactional venue is appropriate under § 1391(b)(2), "[c]ourts in [trademark infringement] cases look to whether various events took place in the forum district—notably, the affixing of allegedly infringing labels, sales, customer confusion, and whether the [alleged infringer] actively targeted the district for advertising or other sales-related purposes." 14D Wright et al., *supra*, § 3806.[6]

Combining aspects from the law of transactional venue in declaratory judgment actions alleging non-infringement of a patent and in trademark infringement actions, the court concludes that, generally, a substantial part of the events or omissions giving rise to a declaratory judgment action alleging non-infringement of a trademark occurs in the location where there are sales or advertising of goods or services bearing the putatively infringing mark as well as in the location where the plaintiff placed the putatively infringing mark on the goods or prepared advertising bearing the mark. The court's conclusion arises from the fact that, in the closely analogous field of patent litigation, venue for a declaratory judgment action alleging non-infringement generally

---

[6] Unlike in a patent infringement action, the manufacturing within a forum of the product to which an allegedly infringing mark is later affixed, alone, is insufficient to establish venue in that forum in a trademark infringement action. *See* 14D Wright et al., *supra*, § 3806.

will lie where the events or omissions that would give rise to a potential claim for patent infringement occur. The court sees no reason why the same underlying rationale should not apply in the field of trademark litigation, and venue for a declaratory judgment action alleging non-infringement, although it may also lie in other fora, generally will lie where the events or omissions that would give rise to a potential claim for trademark infringement occur. *See Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*, No. C 06-07028 MMC, 2007 WL 274836, at *1 (N.D. Cal. Jan. 31, 2007); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005); *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*, 923 F. Supp. 950, 958 (S.D. Tex. 1996). Because transactional venue for trademark infringement actions is appropriate in the locations where there are sales or advertising of the allegedly infringing goods or services and where the alleged infringer placed the allegedly infringing mark on the goods or prepared the allegedly infringing advertising, venue generally would be appropriate in these same locations for mirror-image declaratory judgment actions alleging non-infringement of a trademark.

Here, it appears undisputed that Jeffers advertised and sold the handbells and handbell components that allegedly infringe on Schulmerich's trademarks in South Carolina and that Jeffers placed the allegedly infringing marks or dress on the handbells and handbell components in South Carolina. (*See* ECF No. 11 at 3; ECF No. 11-8.) Accordingly, the court concludes that Jeffers has met its burden to demonstrate that venue is appropriate in this district.

2. Forum-selection clause

Second, aside from it arguments regarding transactional venue, which the court has rejected, Schulmerich also argues that the case should be transferred for convenience pursuant to § 1404(a) to the U.S. District Court for the Eastern District of Pennsylvania because a forum-selection clause in purchase orders between Schulmerich and Jeffers prescribes courts in

Pennsylvania as the only permissible venues. (*See* ECF No. 6-1 at 14-18; ECF No. 6-2; ECF No. 6-3.) Schulmerich asserts that Jeffers accepted numerous purchase orders from Schulmerich regarding sales of goods or services (*see* ECF No. 6-1 at 16-17) and notes that each purchase order specified that, by accepting it, Jeffers "agree[d] to be bound by the[] terms and conditions set forth" in a separate document titled "Terms and Conditions" (the "T&C") (ECF No. 6-3). The T&C states that "all disputes arising under any invoice and/or [the T&C] shall be resolved in the state courts of the Commonwealth of Pennsylvania, specifically the Court of Common Pleas of Bucks County, Pennsylvania, or in the United States District Court for the Eastern District of Pennsylvania." (ECF No. 6-2 ¶ 14.) Schulmerich asserts that the T&C's forum-selection clause applies to Jeffers' declaratory judgment action because the impasse culminating in the trademark dispute that is the subject of the declaratory judgment action arose in the context of Jeffers' and Schulmerich's business relationship. (ECF No. 6-1 at 17.) Specifically, Schulmerich avers that the trademark dispute was somehow occasioned by Schulmerich's 2013 decision to stop selling authorized handbell components to Jeffers. (*Id.*)

"[A] district court considering a § 1404(a) motion must evaluate both the convenience of the parties and various public-interest considerations" and, "[o]rdinarily, . . . would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, ___ U.S. ___, 134 S. Ct. 568, 581 (2013) (internal footnote and parenthetical omitted) (quoting 28 U.S.C. § 1404(a)). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum,'" as "'a valid forum-selection clause should be given controlling weight in all but the most exceptional cases.'" *Id.* (brackets omitted) (quoting *Stewart*

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31, 33 (1988)). "Of course, a forum[-selection] clause will govern only if it applies to the dispute at hand." 14D Wright et al., *supra*, § 3803.1. In determining the scope of the forum-selection clause, the court looks "to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998).

The court concludes that, even assuming the T&C's forum-selection clause is otherwise valid, the trademark dispute at issue in this declaratory judgment action is outside the clause's scope. The T&C's forum-selection clause specifies that it applies to all disputes arising under the purchase orders or the T&C, but Schulmerich does not argue that the parties' rights involving the use of Schulmerich's trademarks arise under the purchase orders or under the T&C, and the court perceives no language in the purchase orders or the T&C purporting to delineate such rights. In the court's view, the dispute in the instant action—whether Jeffers infringed Schulmerich's trademarks—arises not from the purchase orders, the T&C, or any other contractual provision in the record, but rather from the parties' rights under the trademark laws. This view is supported by the fact that, even in the absence of the purchase orders and the T&C, Schulmerich would be able to bring a trademark infringement action against Jeffers, and Jeffers would be able to bring a declaratory judgment action alleging non-infringement against Schulmerich. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390-91 (2d Cir. 2007); *Valencell, Inc. v. Apple Inc.*, No. 5:16-cv-1-D, 2017 WL 2819768, at *2 (June 28, 2017); *Krist v. Scholastic, Inc.*, ___ F. Supp. 3d ___, No. 16-6251, 2017 WL 2349004, at *3-4 (E.D. Pa. May 30, 2017); *Steinmetz v. McGraw-Hill Global Educ. Holdings, LLC*, 220 F. Supp. 3d 596, 605 (E.D. Pa. 2016); *JHT Tax, Inc. v. Houle*, No. 2:11cv66, 2011 WL 5006941, at *4 (E.D. Va. Sept. 23, 2011); *cf. Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F. 3d 600, 601-03 (7th Cir. 1994) (holding that forum-selection clause

governed trademark-infringement claim where resolution of dispute depended on interpretation of the contract). Accordingly, the court rejects Schulmerich's argument that the action should be transferred under § 1404(a) on the basis of the forum-selection clause in the T&C.[7]

## C. Abstention

Lastly, Schulmerich argues that the court should abstain from entertaining Jeffers' declaratory judgment action until the separate action Schulmerich filed in Pennsylvania state court against Jeffers and Lackey, which was later removed to federal court in the Eastern District of Pennsylvania, is resolved. (*See* ECF No. 6-1 at 18-30.) As Jeffers points out in its supplemental response (*see* ECF No. 35), this last argument is advanced on the basis that abstention is warranted specifically because of the existence of a parallel suit in a different court (*see* ECF No. 6-1 at 18-30). Since Schulmerich advanced this argument, the U.S. District Court for the Eastern District of Pennsylvania granted Jeffers' motion to transfer Schulmerich's action to this court. *See Schulmerich*, No. 3:17-cv-00186-JMC, ECF Nos. 7, 8, 11, 12, 13. Jeffers, in its supplemental response, asserts that, following the transfer of the putative parallel action to this court, Schulmerich's abstention argument is moot (*see* ECF 35), and Schulmerich has not responded to this assertion. The court agrees that the argument is moot and therefore declines to consider it.

---

[7] In a footnote, Schulmerich also argues that, "in the alternative, this matter should also be transferred to the Eastern District of Pennsylvania pursuant to the traditional analysis of 28 U.S.C. § 1404(a). All private and public interests weigh in favor of transfer." (ECF No. 6-1 at 18 n.4.) Schulmerich provides no other argument regarding the § 1404(a) factors that courts normally address in the absence of a controlling forum-selection clause. The court declines to address this argument because it is not sufficiently developed. *See Clayton v. Nationwide Mut. Ins. Co.*, No. 5:16-cv-02467-JMC, 2017 WL 2377527, at *5 (D.S.C. June 1, 2017) ("As a general rule, parties may not outsource their legal research to the court or otherwise foist upon it the necessary legwork to flesh out a legal claim or defense because, by permitting a party to do so, the court edges into the impermissible advocatory role of argument-creator.").

## IV. CONCLUSION

For the foregoing reasons, Schulmerich's motion to dismiss or transfer Jeffers' complaint

(ECF No. 6) is **DENIED**.

**IT IS SO ORDERED**.

J. Michelle Childs

United States District Court Judge

August 18, 2017
Columbia, South Carolina